### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EMANON SHANNON,** | : | **CIVIL ACTION NO. 1:11-CV-1015** |
| | : | |
| **Petitioner** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **JEFFREY N. DILLMAN,** | : | |
| **ATTORNEY GENERAL OF THE** | : | |
| **STATE OF PENNSYLVANIA,** | : | |
| | : | |
| **Respondents** | : | |

### MEMORANDUM

Petitioner Emanon Shannon ("petitioner" or "Shannon"), a Pennsylvania state inmate, initiated this action with the filing of a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the following 2006 Court of Common Pleas of Dauphin County convictions: robbery, aggravated assault, kidnaping, conspiracy and two separate firearms violations.   (Doc. 1; Doc. 9-8, at 79.)  For the reasons that follow, the petition will be denied.

## I.   Background

The following recitation of the facts is extracted from the opinion of the Superior Court of Pennsylvania affirming petitioner's judgment of sentence:

> The record reflects the following facts and procedural history.  On the morning of March 26, 2005, in the City of Harrisburg, Pennsylvania, Appellant, carrying a firearm, approached the car of Juan Matos. Appellant threatened to rob Juan Matos and Shamar McCollum who were near Matos' car.  N.T., 3/8/2006, at 50-51.  After McCollum refused to cooperate, Appellant and McCollum began to fight.  During the altercation, Appellant struck McCollum with the gun and then shot him

in the arm.  Id. at 52-56.  After being shot, McCollum fled the scene and was taken to the hospital by some friends.  Id. at 57.

As McCollum fled the scene, Appellant and several other men forced Matos into the vehicle at gunpoint.  Id. at 89.  Matos felt his hat pulled over his face as the car began to drive away.  The captors searched Matos for money and other valuables.  Id. at 90-91.  After the men drove for a couple of minutes, they forced Matos into the trunk of the car at gunpoint.  Id. at 95.  The men then drove to a motel in Fairview Township, York County.  They led Matos into a motel room where they held him captive.  Id. at 97-103.

At some point while Matos was held captive, police officer Tyson Baker pulled into the motel parking lot.  Id. at 168.  Officer Baker observed a suspicious looking car, later identified as Matos' car, with its windshield wipers on.  No keys were in the ignition.  Id. at 168-69.  Because the car appeared as it if might be a stolen vehicle, Officer Baker stayed in the area to watch the exit of the parking lot.  Id. at 168-170.  As he was waiting, Officer Baker saw a cab leave the parking lot and stop a short distance from the motel.  Appellant and another man exited the cab because they were fighting.  Id. at 172.  Officer Baker responded to the fight, placed the two men under arrest, and proceeded to issue the men their Miranda [v. Arizona, 384 U.S. 436 (1966)] rights.  Id. at 170-173.  During the search incident to arrest, the police found a receipt for a motel room in Appellant's name, jewelry, and a PNC bank card bearing the name of Juan Matos.  Id. at 173-175.

Sometime after Appellant was arrested, Matos escaped the motel room.  When he left, he still had some residual duct tape on his clothes.  Id. at 176.  Matos encountered the police as he left the motel room and told them what had happened, without naming his abductors.  The police went to the room where Matos had been held captive.  This was the same room designated on the receipt found on Appellant.  The police also found duct tape on the floor and Matos' blue boxer shorts in the trash can.  Id. at 176-179.

Appellant was charged with multiple crimes based on his involvement in the incidents above.  On March 10, 2006, following trial, a jury found Appellant guilty of robbery, aggravated assault, kidnapping, conspiracy, and two separate firearms violations.  Sentencing was deferred and a presentence investigation was ordered.  On April 27, 2006, Appellant was sentenced to an aggregate term of 45 to 90 years incarceration in a state correctional institution.

2

(Doc. 9-8, at 77-80.)

## II.   <u>Procedural History</u>

Following his April 27, 2006, sentencing, Shannon pursued a direct appeal

rasing claims of sufficiency and weight of the evidence and trial court abuse of

discretion related to sentencing.  (Doc. 9-8, at 81-82, citing Appellant's Brief at 8.)

After the notice of appeal was filed, petitioner's trial counsel, Dale Klein (Klein),

moved to withdraw as counsel.  (Doc. 9-3, at 11.)  Klein's motion was granted and

Ari D. Weitzman (Weitzman), was appointed as appellate counsel.  (<u>Id.</u>)  Prior to

disposition of the appeal, Weitzman moved to withdraw as counsel on the basis that

he "conscientiously examined the entire record and has determined that the appeal

is frivolous."  (Doc. 9-8, at 81.)  On August 21, 2007, the superior court issued a

decision finding all issues raised to be frivolous, affirming the judgment of sentence,

and granting counsel's petition to withdraw.  (<u>Id.</u> at 89-90.)

Shannon then commenced collateral proceedings pursuant to Pennsylvania's

Post Conviction Relief Act (PCRA), 42 Pa. C.S.A. § 9541 *et. seq.*, which unfolded as

follows:

> On November 16, 2007, Appellant filed a *pro se* PCRA petition.  On
> December 6, 2007, the PCRA court appointed counsel, William Shreve,
> Esq., to represent Appellant.  On April 11, 2008, Attorney Shreve filed a
> Turner/Finley 'no merit' letter with the PCRA Court.  <u>Commonwealth v.
> Turner</u>, 518 Pa. 491, 544 A.2d 927 (1988); <u>Commonwealth v. Finley</u>,
> 550 A.2d 213 (Pa. Super. 1988) (*en banc*).  On April 16, 2008, the PCRA
> court issued an order granting PCRA counsel's petition to withdraw and
> giving Appellant notice of the PCRA court's intent to dismiss the PCRA
> petition.  Thereafter, Appellant filed several *pro se* documents with the
> PCRA court.  On December 31, 2008, the PCRA court issued an order
> which appointed Jeffrey B. Engle, Esq., to represent Appellant and

scheduled a PCRA hearing.  The PCRA court held an evidentiary hearing on March 19, 2009.  On June 3, 2009, the PCRA court issued an order denying Appellant's PCRA petition.

(Doc. 9-12, at 22.)  A timely appeal to the superior court presenting the issues set

forth below was filed on petitioner's behalf by Attorney Engle:

1.    Whether prior PCRA counsel, William Shreve, was ineffective for failing to raise the issue of trial counsel's ineffectiveness for failing to object or request a mistrial due to Detective Lau reading [Appellant's] co-defendant's statement which incriminated [Appellant]?

2.    Whether prior PCRA counsel was ineffective for failing to address trial counsel's ineffectiveness in failing to request a cautionary instruction due to the fact that evidence was introduced that the Commonwealth witnesses had pending charges?

3.    Whether prior PCRA counsel was ineffective for failing to address trial counsel's ineffectiveness for failure to inform the trial court that a potential conflict existed with her representation of [Appellant]; namely, that her husband, Adam Klein, had previously prosecuted [Appellant] in a revocation hearing?

4.    Whether Dauphin County Court of Common Pleas erred by accepting prior PCRA counsel's 'no merit' letter as it did not comply with the Finley standard because prior PCRA counsel only addressed the *pro se* issues and did not address his own independent review of the record?

(Doc. 9-3, at 15; Doc. 9-12, at 22-23.)  In their August 27, 2010 decision, the superior

court stated:

We have reviewed the briefs of the parties, the relevant law, the certified record on appeal, and the opinion of the PCRA court issued June 15, 2010.  It is our determination that the PCRA court's opinion adequately disposes of the underlying merits of the ineffectiveness issues raised by Appellant on appeal.  See PCRA Court Opinion, 6/15/10, at 4-6 (addressing underlying merits of ineffective assistance of counsel regarding failure to request a mistrial after Commonwealth witness read into testimony statement from co-defendant); 7-8 (addressing underlying

4

merits of claim of ineffective assistance of counsel regarding failure to request cautionary instructions pertaining to evidence that a Commonwealth witness had pending charges); 8-11 (addressing underlying merits of claim of ineffective assistance of counsel for failing to inform trial court of potential conflict with trial counsel's representation of Appellant); 11-12 (addressing issue of whether the PCRA court erred in accepting previous PCRA counsel's "no merit" letter when it did not comply with the *Finley* standard). Thus, PCRA counsel cannot be deemed ineffective for failing to raise these allegations. Accordingly, we affirm on the basis of the trial court's opinion.

(Doc. 9-12, at 24.)

On October 20, 2010, Shannon filed a second PCRA petition seeking to reinstate his right to file a petition for allowance of appeal to the Supreme Court of Pennsylvania. (Doc. 9-12, at 27-35.) Counsel was appointed. (Doc. 9-3, at 17.) On January 6, 2011, the PCRA court granted relief. (Id. at 18.) On February 9, 2011, counsel filed a "no merit" letter. (Id.) Counsel's motion was granted on February 15, 2011. (Id.) Shannon did not file a petition for allowance of appeal to the supreme court.

## III.   Grounds for Relief

On May 26, 2011, the instant petition for writ of habeas corpus was filed seeking relief on the following grounds:

1.   Whether appellate counsel, Weitzman, was ineffective for failing to assert that trial counsel was ineffective because of his "failure to object to a second prosecution in Dauphin County on the basis that the Dauphin County charges arose from the same criminal episode for which petitioner had once pleaded guilty to in York County, a violation of 18 Pa.C.S.A. 110;

2.   Whether appellate counsel, Weitzman, was ineffective for failing to assert that trial counsel was ineffective because of his "failure to object or preserve a Bruton argument in regards to admittance

5

of the statement by a non-testifying co-defendant during an uncounseled extra judicial interrogation implicating the petitioner when said extra judicial statement was presented to the jury through the affiant, without cautionary instruction;

3.  Whether appellate counsel, Weitzman, was ineffective for failing to assert that trial counsel was ineffective because of his failure to move for severance based on introduction of "a  Liily [sic] extra-judicial statement from Petitioner's non-testifying co-defendant during their joint trials which only served to unduly prejudice the petitioner;

4.  Whether PCRA counsel was ineffective for failing to raise the issue of trial counsel's "failure to inform the trial court that a potential conflict existed with her representation of petitioner; namely, that her husband, Adam Klein, had previously prosecuted petitioner, and

5.  Whether the PCRA court erred by accepting PCRA counsel's no merit letter "as it did not comply with the <u>Finley</u> standard, because prior PCRA counsel onlt [sic] addressed the pro se issues and did not address his own independent review of the record.

(Doc. 1, at 15-16.)

IV.  **<u>Discussion</u>**

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 498-499 (1973).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-8 (1991).  Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C.

§ 2254(a); <u>Estelle</u>, 502 U.S. at 67-8; <u>see</u> also <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984);

<u>Johnson v. Rosemeyer</u>, 117 F.3d 104 (3d Cir. 1997).

### A.    Exhaustion

Before a federal court can review the merits of the grounds for relief

contained in a state prisoner's habeas petition, it must determine whether he has

met the requirements of exhaustion.  Relief cannot be granted unless all available

state remedies have been exhausted, or there is an absence of available state

corrective process, or circumstances exist that render such process ineffective to

protect the rights of the applicant.  <u>See</u> 28 U.S.C. § 2254(b)(1).  The exhaustion

requirement is grounded on principles of comity in order to ensure that state courts

have the initial opportunity to review federal constitutional challenges to state

convictions.  <u>See</u> <u>Werts v. Vaughn</u>, 228 F.3d 178, 192 (3d Cir. 2000).

In the matter *sub judice*, respondents argue that Shannon failed to exhaust

the ineffective assistance of appellate counsel issues set forth in claims one, two,

and three.  (Doc. 9-1, at 4; Doc. 1, at 15.)  Although issue one, whether appellate

counsel Weitzman was ineffective for failing to raise trial counsel's ineffectiveness

on the issues of whether the prosecution in Dauphin County constituted a second

prosecution in violation of 18 PA.C.S.A. § 110, and three, whether his Sixth and

Fourteenth Amendment rights were violated because there was no request for a

severance, were presented by PCRA counsel in the initial collateral proceeding

(Doc. 9-9 at 4; 19-21, 24-25), they were not included in the superior court appeal.

They were not among the alleged errors set forth in Shannon's statement of matters

on appeal.  (Doc 9-11, at 4).  Nor were they included in the "Statement of Questions

Presented" section in either the PCRA appellate brief (Doc. 9-11, at 30), or amended

PCRA appellate brief (Doc. 9-12, at 6.)   Consequently, they are unexhausted and

procedurally defaulted.  See Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)

(finding that when a habeas petitioner has failed to exhaust a claim and it is clear

that the state courts would not consider the claim the claim because of a state

procedural rule, the claim is procedurally defaulted.)

Respondents also argue that issue two, whether appellate counsel, Weitzman,

was ineffective for failing to assert that trial counsel was ineffective because of his

"failure to object or preserve a Bruton argument in regards to admittance of the

statement by a non-testifying co-defendant during an uncounseled extra judicial

interrogation implicating the petitioner when said extra judicial statement was

presented to the jury through the affiant, without cautionary instruction," was not

raised by Shannon on appeal from the denial of his PCRA petition and, "thus, he

did not exhaust his state remedies for Ground Two."  (Doc. 1, at 15; Doc. 9-1, at 7.)

Respondents are partially correct.  In support of this argument, Shannon states the

following:

> Specifically, officer Baker testified that he seen the "physical altercation"
> with the petitioner and Co-dendant [sic] Gillis. (N.T. 3/7-10/06 at 171-173).
> From that point the jury was informed that petitioner and co-defendant
> was in a physical altercation with each other.  However, later in the trial,
> the commonwealth called detective Lau to testify to the contents of Co-
> defendants statement. (N.T. 3/7-10-06 at 231-232).  Although the
> statement was redacted to remove Petitioner's name as "the other
> person", the jury had already heard that there was a "physical
> altercation" between petitioner and the non-testifying co-defendant

(Gillis).   Specifically, once detective Lau testified that "Gillis and the other person" would not give Gillis the necklace, and that the "other person" was responsible for taking the necklace, the redaction did not protect the Confrontation Clause violation because the jury knew who the "other person" was namely the petition.   Thus, based on this record trial counsel should have objected and requested a mistrial or a severance due to the fact that the commonwealth wanted to introduce this statement and Officer Baker was going to testify to the events that occurred which no redaction could protect the petitioner's Confrontation rights under the 6th Amendment.

(Id. at 2-3.)   Although Shannon testified about this concern in his PCRA hearing

(Doc. 9-10, at 67-68), the argument was not presented on appeal as there was

absolutely no reference to the testimony of Officer Baker.   On appeal, Shannon

argued that "[a]ppellant's co-defendant offered an improbable story, as to why an

item implicating him in the crime was found in his pocket, to Detective Lau, which

was read to the jury and used to establish that Appellant was at the scene of the

crime."  (Doc. 9-12, at 9.)   He argued that "there can be no credible argument for

why Attorney Klein would not have objected to this statement.   The strategy chosen

by Attorney Klein offered no possibility of success, as the jury would hear the

incriminating evidence against Appellant, and easily conclude that he was

substantially involved in the commission of the crime."  (Id. at 10.)   Therefore, to the

extent that Shannon attempts to establish ineffectiveness based on the correlation

of the testimony of Officer Baker and Detective Lau, the claim is unexhausted and

procedurally defaulted.   See Coleman, 501 U.S. at 735 n.1.

Shannon does not dispute that the claims are unexhausted and procedurally defaulted.  Rather, he asserts that "[d]ue to the recent decision by U.S. Supreme Court in <u>Martinez v. Ryan</u>, 132 S.Ct. 1309 (2012), [t]he issue of procedural default maybe [sic] moot and this Court can proceed to review the merits of the claims based on P.C.R.A. counsel's failure to present the claims correctly for the state courts." (Doc. 14, at 2.)  Shannon's reliance on <u>Martinez</u> is misplaced.  In <u>Martinez</u>, the United States Supreme Court held that "when a State requires a prisoner to raise an ineffective-assistance-of-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances.  The first is where the state courts did not appoint counsel in the initial-review collateral proceeding, for a claim of ineffective assistance at trial.  The second is where appointed counsel in the initial review-collateral proceeding, which the claim should have been raised, was ineffective under the standards enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." <u>Id.</u> at 1318.  Neither circumstance arose in this case.  Counsel was appointed in the initial PCRA proceeding, and the ineffective assistance of trial counsel claims at issue were raised by PCRA counsel in that initial proceeding, considered by the PCRA Court and rejected.  Thus, <u>Martinez</u> is inapplicable.

However, despite respondents' argument to the contrary, with respect to issue two, Shannon specifically included in his PCRA petition the issue of whether "[a] request for a mistrial should have been made when Detective Lau read, at Defendant's trial, Defendant's Co-Defendant's statement, which incriminated the

Defendant," (Doc. 9-11, at 14) and on appeal he framed the issue in terms of

"[w]hether prior PCRA counsel, William Shreve, was ineffective for failing to raise

the issue of trial counsel's ineffectiveness for failing to object or request a mistrial

due to detective Lau, reading [Appellant's] Co-Defendant's statement which

incriminated [Appellant]?"  (Doc. 9-12, at 22-23.)  The superior court's opinion

expressly observed that, "although the issues as set forth in Appellant's brief are

layered claims of ineffective assistance of prior counsel as presented in Appellant's

counseled Rule 1925(b) statement and an accompanying counseled brief in support

of Appellant's Rule 1925(b) statement, the PCRA court recharacterized Appellant's

issues in its Rule 1925(a) opinion to focus on the underlying issues of the

ineffectiveness claims."  See PCRA Court Opinion, 6/15/10, at 4."  (Doc. 9-12, at 23

n.1.)  Therefore, although the issue is presently framed as an appellate counsel

ineffectiveness claim, it cannot be said that Shannon never presented this layered

claim to the state courts.  Moreover, because consideration of all counsels'

ineffectiveness requires review of the merits of the same underlying claim, and

because any conclusion as to one counsel's ineffectiveness in this regard will apply

equally to the other, the distinction between appellate counsel and PCRA counsel is

immaterial.  This portion of the second ground for relief will proceed to a merits

review.

### B.    Merits

Once a court is satisfied that the exhaustion requirement has been met and a merits review of a claim is warranted, as is the case with Shannon's grounds two, four and five, 28 U.S.C. § 2254(d) provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits shall not be granted unless the decision is contrary to, or involves an unreasonable application of, clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).  AEDPA thus limits a federal court's authority to grant habeas relief when a state court has previously considered and rejected the federal claim on the merits.

The United States Court of Appeals for the Third Circuit has set forth the following analyses applicable to the legal inquiries:

> Consistent with Supreme Court precedent, we read § 2254(d) to require three distinct legal inquiries.  See, e.g., Harrington v. Richter, --- U.S. ---, 131 S. Ct. 770, 785 (2011).  The first is whether the state court decision was "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).  The second is whether the state court decision "involved an unreasonable application of" such law.  § 2254(d)(1).  And the third is whether the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented" to the state court. § 2254(d)(2).

> The test for § 2254(d)(1)"s "unreasonable application of" clause is as follows:  "[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." Rompilla v. Beard, 545 U.S. 374, 380 (2005) (quoting Wiggins v. Smith, 539 U.S. 519, 520 (2003)).  For purposes of § 2254(d)(1), "[i]t is not enough that a federal habeas court, in its independent review

of the legal question, is left with a firm conviction that the state court was erroneous." Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (internal quotations omitted). "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 75-76 (quoting Williams v. Taylor, 529 U.S. 362, 411 (2000)). Rather, "[t]he state court's application of clearly established law must be objectively unreasonable" before a federal court may grant the writ. Andrade, 538 U.S. at 75.

The test for § 2254(d)(1)'s "contrary to" clause is whether the state court decision "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405, and Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)). Of course, a state court's resolution of a question that the Supreme Court has not resolved can be neither contrary to, nor an unreasonable application of, the Court's precedent. See Kane v. Garcia Espitia, 546 U.S. 9 (2005).

The test for § 2254(d)(2)'s "unreasonable determination of facts" clause is whether the petitioner has demonstrated by "clear and convincing evidence," § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record. See Rice v. Collins, 546 U.S. 333, 338-339 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'") (quoting § 2254(e)(1)) (citing Miller-El v. Dretke, 545 U.S. 231, 240 (2005))); see also Simmons v. Beard, 590 F.3d 223, 231 (3d Cir. 2009) ("Under the § 2254 standard, a district court is bound to presume that the state court's factual findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence."). Importantly, the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication. Cullen v. Pinholster, --- U.S. ---, 2011 WL 1225705, at *11 (Apr. 4, 2011).

Rountree v. Balicki, 640 F.3d 530, 537-38 (3d Cir. 2011). Like the "unreasonable

application" prong of paragraph (1), a factual determination should be adjudged

"unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record.  28 U.S.C. § 2254(d)(2); <u>Porter v. Horn</u>, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); <u>see</u> <u>also</u> <u>Torres v. Prunty</u>, 223 F.3d 1103, 1107-08 (9th Cir. 2000); <u>cf.</u> <u>Jackson v. Virginia</u>, 443 U.S. 307, 316 (1979).  Only when the finding lacks evidentiary support in the state court record, or is plainly controverted by the evidence, should the federal habeas court overturn a state court's factual determination.  <u>Porter</u>, 276 F. Supp. 2d at 296; <u>see</u> <u>also</u> <u>Williams</u>, 529 U.S. at 408-09.

The merits of the claims presented by Shannon will now be analyzed in accordance with these standards.

1.    <u>Ineffective Assistance of Counsel</u>

Shannon's ineffective assistance of counsel claims set forth in grounds two and four are governed by the standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), which constitutes "clearly established Federal law" for AEDPA purposes.  <u>Williams v. Taylor</u>, 529 U.S. 362, 391 (2000); <u>Rainey v. Varner</u>, 603 F.3d 189, 197 (3d Cir. 2010).  A habeas petitioner asserting a claim under <u>Strickland</u> must establish two elements.  "First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  <u>Strickland</u>, 466 U.S. at 687.  In evaluating counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]"  <u>Id.</u> at 689.

Thus, counsel's performance will be deemed deficient only if it "fell below an objective standard of reasonableness." Id. at 688. The question ultimately is "whether, in light of all the circumstances, the [challenged] acts or omissions were outside the wide range of professionally competent assistance." Id. at 690.

"Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." Id. at 687. To establish prejudice, "[t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

   *a.* *Whether the State Court Decision was Contrary to the* <u>*Strickland*</u> *Standard Set Forth by the United States Supreme Court*

Under the "contrary to" clause, we must determine whether the state court applied a rule that contradicts <u>Strickland</u> or was confronted with a set of facts materially indistinguishable from a decision of the United States Supreme Court but reached a different result.

The Court will first address whether the state court applied a rule that contradicts <u>Strickland</u>. Petitioner's ineffective assistance of counsel claims were raised in the PCRA proceedings. On appeal, the Pennsylvania Superior Court determined that the PCRA court's opinion adequately disposed of the underlying merits of the ineffectiveness issues raised on appeal. (Doc. 9-12 at 24.) The PCRA

15

Court's recitation of the Pennsylvania standard for ineffective assistance is set forth

below:

> In order to establish ineffectiveness of counsel, the petitioner must demonstrate (1) that the issue underlying the claim of ineffectiveness has arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. Commonwealth v. Robinson, 877 A.2d 433, 439 (Pa. 2005); Commonwealth v. Pierce, 786 A.2d 203, 213 (Pa. 2001). The Defendant must prove all three prongs and failure to prove any one of the above-mentioned prongs is sufficient to dismiss the claim without discussion of the other two. Id.

(Doc. 9-11, at p. 15). The above standards relied upon by the PCRA court essentially

mirror the Strickland standard of review. (Id.) An examination of the arguable

merit of an underlying claim is not an explicit step under Strickland, but the United

States Court of Appeals for the Third Circuit has held that such a step is consistent

with Strickland. Rompilla v. Horn, 355 F.3d 233, 248 n. 9 (3d Cir. 2004), reversed on

other grounds, Rompilla v. Beard, 545 U.S. 374 (2005). Indeed, the merits

assessment is considered a determinative factor in the "deficient performance"

prong of the Strickland analysis. See Werts, 228 F.3d at 203-04; Parrish v.

Fulcomer, 150 F.3d 326, 328 (3d Cir. 1998) (counsel not ineffective for failing to raise

meritless claims). Clearly, the state courts which reviewed Shannon's claims did

not apply a rule of law that contradicts Strickland. In fact, our court of appeals has

held that the three prong test set forth in Pierce does not contradict Strickland.

Werts, 228 F.3d at 204.

On the issue of whether the state court decision differs from any Supreme Court decision with indistinguishable facts, the court simply notes that Shannon has not advanced such an argument.

> b.   *Whether the State Court Determinations Involved an Unreasonable Application of* Strickland

The United States Supreme Court has recently stated the following with regard to the application of Strickland in the context a federal habeas petition:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different if, for example, the Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under the AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

Harrington v. Richter, — U.S. — , — ,131 S.Ct. 770, 785 (2011) (internal citation and quotation marks omitted) (emphasis in original). The Court further stated "that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Id. at 786, 788 (quoting Strickland, 466 U.S. at 690.) "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." (Id.) (internal citation and quotation marks omitted). Shannon, does not argue that the state court unreasonably applied Strickland.

c.   *Whether the State Court Decision was Based on an Unreasonable Determination of the Facts in Light of the Evidence Presented.*

As noted *supra*, the test for § 2254(d)(2)'s "unreasonable determination of facts" clause is whether the petitioner has demonstrated by "clear and convincing evidence," that the state court's determination of the facts, which are presumed correct, was unreasonable in light of the record.  See Rice, 546 U.S. at 338-339. ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'") (quoting § 2254(e)(1)) (citing Miller-El v. Dretke, 545 U.S. 231, 240 (2005))).

i.   Bruton Issue

Shannon asserts a layered ineffectiveness claim based on trial counsel's failure to object or preserve a Bruton argument when Commonwealth witness, Detective Lau, read petitioner's non-testifying co-defendant Gillis's uncounseled extra judicial statement at trial.  (Doc. 1, at 15.)  In Bruton, the Court held that the admission of an out of court statement of a defendant who implicated his co-defendants, and who did not testify at trial, violated the co-defendant's Sixth Amendment confrontation rights.  Bruton, 391 U.S. 123. Therefore, in order to avoid a Bruton violation, a prosecutor trying a multi-defendant case must redact the confession "to eliminate not only the [codefendant's] name, but any reference to his or her existence."  Richardson v. March, 481 U.S. 200, 211 (1987). The PCRA court noted that during the PCRA hearing "Attorney Klein clearly testified that she requested this Court to redact certain portions of the statement to conform with the

18

tenets sets [sic] forth in <u>Bruton v U.S.</u>, 391 U.S. 123 (1988). (Notes of Testimony of

the PCRA Hearing, March 19, 2009 at 18-19, 26)." (<u>Id.</u>) Further, "Co-Defendant

Gillis's statements were entered into evidence to show Mr. Gillis's involvement with

the crimes and not for the purpose of showing the Defendant's involvement. (Notes

of Testimony, hereinafter "N.T." at 319). In fact, when Co-Defendant Gillis's

statement was entered into evidence, the Defendant's name was never even

mentioned as being involved in the commission of the crimes. (N.T. at 227-233).

Therefore, Co-Defendant Gillis's statement conformed to the precepts of <u>Bruton</u>."

(Doc. 9-11, at 16.)

The PCRA court further determined that <u>Crawford v. Washington</u>, 541 U.S.

36 (2004) was inapplicable because "Co-defendant Gillis's statement was never

directed against the Defendant, hence the Defendant's right to confront his accuser

was never violated." (<u>Id.</u>) In <u>Crawford</u>, the Supreme Court found that the

Confrontation Clause limits the  admissibility of a testimonial statement of a

witness absent from trial to the situation where the declarant is unavailable and the

defendant has had a prior opportunity to cross-examine the declarant. <u>Crawford</u>,

541 U.S. at 59.

In light of the above, the PCRA court concluded that the ineffective

assistance claim lacked merit. (Doc. 9-11, at 16.) Because Shannon has not

demonstrated by "clear and convincing evidence," that the state court's

determination of the facts, which are presumed correct, was unreasonable in light

of the record, his claim fails.

ii.     Conflict of Interest Issue

Shannon also asserts a claim of layered ineffective assistance of counsel

based on trial counsel's failure to inform the trial court of a possible conflict of

interest emanating from trial counsel's husband's prosecution of petitioner on a

parole revocation.  (Doc. 2, at 31.)  He cites to the Pennsylvania Rules of

Professional Conduct, which provide guideposts for determining whether a conflict

of interest exists.  (Id. at 31, citing Rules 1.7(a) and 1.7(a)(2).)  He highlights

Comment 11 to Rule 1.7 which "states that lawyers who are married, and

representing different clients in the same or substantially related matters, may face

a conflict of interest in their representation."  "In this case, the two attorneys are

married and representing two adverse parties[,] the Appellant and the

Commonwealth."  (Id. at 31.)  He argues that trial counsel's failure to notify the trial

court of the conflict was unreasonable because it was "outside of the Pennsylvania

Rules of Professional Conduct, which would alert an attorney to their expected

behavior in a particular matter" and that this conduct prejudiced him because

counsel's representation was "less than zealous."  (Id. at 32.)

The PCRA court first found that "Defendant's attorney did not face a conflict

of interest anywhere near enough to warrant her recusal from the case, let alone

warranting a new trial for the Defendant.  Furthermore, the Defendant has

provided absolutely no substantive evidence that any such 'conflict' actually

existed, or that trial counsel's performance of her professional duties in any way

were compromised by her married status."  (Doc. 9-11 at 19.)  In rejecting the

argument that trial counsel was ineffective for failing to bring to the court's attention the "so-called conflict of interest" the court noted that it was well aware of the spousal relationship and that "the Defendant received more than a full measure of effective professional effort on his behalf by his counsel, Attorney Dale Klein. (Id. at 20.)  With respect to his claim that trial counsel's representation was less than zealous as a result of the alleged conflict of interest, "the court found Attorney Klein's performance of her duties as trial counsel to be totally proper and well above the minimum level of advocacy expected for trial counsel.  Indeed, due to Attorney Klein's trial counsel efforts, the Commonwealth was compelled to withdraw some charges based on her motion for a directed verdict.  Therefore, this Court deems the Defendant's claim lacks merit."  (Id. t 20-12.)

The court agrees with the factual observations of the PCRA court as well as its rationale.  The record is devoid of evidence supporting this claim.  In the context of the instant petition, the court finds that Shannon has failed to demonstrate by "clear and convincing evidence," that the state court's determination of the facts, which are presumed correct, was unreasonable in light of the record.  Consequently, petitioner will be denied relief on this claim.

2.    PCRA Court Error

In his final claim, Shannon asserts that the PCRA court erred by accepting initial PCRA counsel's no merit letter as it did not comply with the Finley standard which holds that a defendant in a PCRA matter is entitled to receive an

independent review of the record by competent counsel.  Commonwealth v. Finley, 550 A.2d 213, 215 (Pa. Super 1988).  (Doc. 9-11, at 21.)

It has long been held that claims raising only issues of state constitutional or statutory law are not cognizable on habeas review.  See Pulley v. Harris, 465 U.S. 37, 41 (1984) (holding state law claims are not cognizable in federal habeas corpus).  Indeed, the United States Supreme Court recently reiterated that the habeas statute  "unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'  Wilson v. Corcoran, 562 U.S. —, —, 131 S.Ct. 13, 15, 178 L.Ed.2d 276 (2010) (per curiam) (quoting 28 U.S.C. § 2254(a))."  Swarthout v. Cooke, — U.S. —, —, 131 S.Ct. 859, 861 (2011).  "[F]ederal habeas corpus relief does not lie for errors of state law."  Estelle v. McGuire, 502 U.S. 62, 67 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990).  Petitioner's claim of PCRA court error based on consideration of the adequacy of a Finley letter presents no cognizable federal claim.  Tillett v. Freeman, 868 F.2d 106 (3d Cir. 1989).

Moreover, the "federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas proceeding."  See Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998)  Because petitioner's ultimate criticism is with the state court's analysis in a state collateral proceeding this is not a proper basis for relief.  See Lambert v. Blackwell, 387 F.3d 210, 247 (3d Cir. 2004) (stating

that "alleged errors in [state] collateral proceedings . . . are not a proper basis for habeas relief").

V.      Conclusion

For the reasons set forth above, the petition for writ of habeas corpus will be denied.

**VI.    Certificate of Appealability**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322 (2003)). Here, jurists of reason would not find the disposition of this case debatable. However, petitioner is advised that he has the right for thirty (30) days to appeal our order denying his petition, see 28 U.S.C. § 2253(a); Fed. R.App. P. 4(a)(1)(A), and that our denial of a certificate of appealability does not prevent him from doing so, as long as he also seeks, and obtains, a certificate of appealability from the court of appeals.  See Fed. R.App. P. 22.

An appropriate Order will issue.

_S/ Christopher C. Conner_
CHRISTOPHER C. CONNER
United States District Judge

Dated:      November 19, 2012

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EMANON SHANNON,** | : | **CIVIL ACTION NO. 1:11-CV-1015** |
| | : | |
| **Petitioner** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **JEFFREY N. DILLMAN,** | : | |
| **ATTORNEY GENERAL OF THE** | : | |
| **STATE OF PENNSYLVANIA,** | : | |
| | : | |
| **Respondents** | : | |

## ORDER

AND NOW, this 19th day of November, 2012, upon consideration of the

petition for writ of habeas corpus (Doc. 1), and for the reasons set forth in the

accompanying memorandum, it is hereby ORDERED that:

1.    The petition for writ of habeas corpus is DENIED based upon
petitioner's failure to demonstrate that the applicable state court
decisions were either contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the
Supreme Court of the United States, or were based on an
unreasonable determination of the facts in light of the evidence
presented in the state court proceeding.  28 U.S.C. § 2254(d).

2.    There is no basis for the issuance of a certificate of appealabilty.  See
28 U.S.C. § 2253(c).

3.    The Clerk of Court is directed to CLOSE this case.

        S/ Christopher C. Conner
       CHRISTOPHER C. CONNER
       United States District Judge