**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EMANON SHANNON, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:11-cv-1015 |
| | ) | |
| JEFFREY N. DILLMAN and | ) | Judge Christopher C. Conner |
| ATTORNEY GENERAL OF THE | ) | Magistrate Judge Susan E. Schwab |
| STATE OF PENNSYLVANIA, | ) | |
| | ) | |
| Respondents | ) | |

<u>**JOINT MOTION FOR CONDITIONAL GRANT OF THE WRIT OF HABEAS CORPUS**</u>

Petitioner Emanon Shannon, by and through his counsel, Lynn A. Ellenberger of Fegan

Scott LLC, and Respondents Jeffrey N. Dillman and the Attorney General of Pennsylvania, by

and through their counsel, Assistant District Attorney Ryan Lysaght of the Dauphin County

District Attorney's Office (the "Commonwealth") (collectively, the "Parties"), jointly move this

Court to conditionally grant habeas corpus relief pursuant to 28 U.S.C. § 2254.   In support

thereof, the Parties aver as follows:

**A.  Procedural History**

1.      On May 26, 2011, Mr. Shannon filed a *pro se* habeas petition in this Court

pursuant to 28 U.S.C. § 2254.   ECF 1.   The issues raised are as follows:   compulsory

joinder/double jeopardy, where Mr. Shannon was tried in both York and Dauphin Counties for

crimes arising out of the same series of events; *Bruton v. United States*, 391 U.S. 123 (1968),

where his co-defendant's statement was read to the jury and Mr. Shannon's name was replaced

1

with the descriptor, "the other person;" a severance issue related to the joint trial of the two co-defendants; and a *Strickland v. Washington,* 466 U.S. 668 (1984) issue related to trial counsel's conflict of interest where her husband prosecuted Mr. Shannon in a trial on unrelated charges in 2001.

2.      On November 19, 2012, this Court denied Mr. Shannon's petition for writ of habeas corpus (ECF 17), and Mr. Shannon filed a timely appeal.   ECF 18.

3.      On January 31, 2013, the Court of Appeals for the Third Circuit granted Mr. Shannon's motion to proceed *in forma pauperis.*

4.      On June 12, 2013, the court granted Mr. Shannon a certificate of appealablity, "with regard to the claim that trial counsel was ineffective for failing to object on the basis of, or to otherwise preserve, a *Bruton v. United States*, 391 U.S. 123 (1968), argument pertaining to the admission, at trial, of the redacted statement of a non-testifying co-defendant."   The court also granted Mr. Shannon's motion for appointment of counsel, and that same day, appointed counsel for Mr. Shannon pursuant to the CJA, 18 U.S.C. § 3006A(a)(2)(b).

5.      On August 15, 2014, Mr. Shannon filed a motion to stay the briefing schedule because the United States Supreme Court granted a petition for writ of certiorari in *Wetzel v. Washington*, 572 U.S. 1084 (2014), vacated the Third Circuit's decision in *Washington v. Secretary,* 726 F.3d 471 (3d Cir. 2013), and remanded for further proceedings in light of *White v. Woodall*, 572 U.S. 415 (2014).   *Washington* involved interpretation and application of *Bruton*.

6.      On September 17, 2014, the Third Circuit granted Mr. Shannon's motion to stay the case pending the conclusion of the proceedings in *Washington.*   On September 1, 2015, the Third Circuit decided *Washington v. Secretary,* 801 F.3d 160 (3d Cir. 2015), and because of

2

continued proceedings in that case, Mr. Shannon again moved to stay the briefing schedule in his appeal on December 22, 2015.

7.     On January 19, 2016, the Third Circuit granted Mr. Shannon's motion, staying the appeal until resolution of the proceedings in *Washington.*

8.     The prior month, on December 8, 2015, the Judicial Conduct Board filed formal charges against then-Pennsylvania Supreme Court Justice J. Michael Eakin, alleging he was a party to an email network that sent distasteful, inappropriate, and bigoted content.

9.     On February 8, 2016, Mr. Shannon filed a successor petition in the Court of Common Pleas of Dauphin County in his underlying criminal case, *Commonwealth v. Shannon*, CP-22-CR-002306-2005, raising allegations regarding those newly-discovered emails.

10.     On May 9, 2016, Mr. Shannon and Respondents Jeffrey N. Dillman and the Attorney General of Pennsylvania, the parties in the appeal, jointly advised the Third Circuit of the conclusion of the proceedings in *Washington,* but also of the pendency of Mr. Shannon's successor PCRA petition in state court.   The Parties agreed that a continued stay of the appeal was appropriate, and Mr. Shannon promised to file a motion to stay the appeal pending exhaustion of state remedies.

11.     On May 13, 2016, Mr. Shannon did so by moving to stay the circuit appeal and to remand the case to this Court for further proceedings.

12.     On October 12, 2016, the Third Circuit granted the motion in part and denied it in part.   The court stayed the appeal pending completion of Mr. Shannon's PCRA proceeding, but denied the motion to remand as presented, because the appeal had divested this Court (the district court) of any ability to rule on a motion to amend Mr. Shannon's habeas corpus petition.

13.     By that time, on October 4, 2016, the Court of Common Pleas had denied Mr.
Shannon's successor PCRA petition on the grounds of timeliness, finding that despite Mr.
Shannon's arguments to the contrary, none of the statutory exceptions in 42 Pa. C.S. § 9545(b)(1)
tolled the limitations period applied.

14.     Mr. Shannon appealed the dismissal, and the dismissal was upheld by the
Pennsylvania Superior Court on April 24, 2018.   *Commonwealth v. Shannon,* 184 A.3d 1010 (Pa.
Super. 2018).

15.     On May 24, 2018, Mr. Shannon filed a Petition for Allowance of Appeal in the
Pennsylvania Supreme Court at 347 MAL 2018.

16.     Mr. Shannon's Petition for Allowance of Appeal was denied on April 14, 2020.
*Commonwealth v. Shannon*, 229 A.3d 569 (2020).

17.     On April 16, 2020, Mr. Shannon advised the circuit court of the conclusion of his
state proceedings and promised to file a motion to remand the case to this Court, which he did on
April 23, 2020.   The Commonwealth did not oppose the motion to remand.

18.     On June 25, 2020, the Third Circuit granted Mr. Shannon's motion to remand
proceedings to this Court, dissolved the stay of the appeal, and relinquished jurisdiction.   ECF
157-1, p.1.   The order provides:

> After careful consideration, we grant the motion to remand, dissolve the stay of the
> appeal, and relinquish jurisdiction. *See United States v. Santarelli*, 929 F.3d 95,
> 106 (3d Cir. 2019). The District Court is directed to reopen the proceedings below.
> We take these actions so that the District Court may consider in the first instance
> whether to grant Shannon's forthcoming motion to amend or supplement the
> habeas petition, *see id.* at 106-07, and, if it denies the motion, whether to issue a
> certificate of appealability regarding that ruling. If Shannon desires to appeal from
> any newly entered final judgment in the case below, he would need to obtain a new
> certificate of appealability from this Court, see 28 U.S.C. 2253(c)(1)(A); *see also*

4

> *Herd v. Tapia*, 356 Fed. App'x 140, 143 (10th Cir. 2009) (Gorsuch, J.) (requiring COA to appeal district court's denial of motion to amend habeas petition)—in the absence of one issued by the District Court—with the caveat that **the resolution of his *Strickland/Bruton* claim has already been deemed debatable among jurists of reason**. *Cf. Socha v. Boughton*, 763 F.3d 674, 683 (7th Cir. 2014). A result of our ruling is to render the District Court's November 19, 2012 interlocutory, such that it can be reviewed on appeal from any newly entered final judgment. *See Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008); *cf. Porter v. Zook*, 803 F.3d 694, 696 (4th Cir. 2015).

*Id.* (emphasis added).

19.     The Third Circuit's order emphasizes that Mr. Shannon possesses a Certificate of Appealability ("COA") on his *Bruton* claim for future proceedings

20.     On September 21, 2020, the court's certified order was sent to this Court in lieu of a formal mandate.   The case was then reopened in this Court.   ECF 24.

21.     In January 2021, Mr. Shannon and the Commonwealth (collectively, the "Parties") first began to discuss the concept of settling this case (ECF 27), and on April 28, 2021, this court referred the case for assignment to a magistrate judge to preside over settlement discussions. ECF 28.

22.     Magistrate Judge Schwab presided over the discussions, and on or around July 6, 2021, the Parties reached an agreement, all conditions of which were resolved on or on October 4, 2021.   The Parties have memorialized the terms of the settlement in a Confidential Settlement Agreement signed by the parties.

23.     Should this Court request it, the Parties will present a copy of the Confidential Settlement Agreement for this Court's *in camera* review and/or the Parties will move to file said Agreement under seal.

### B.  The Parties' Positions

24.      It is Mr. Shannon's position that the *Bruton* claim has already been deemed debatable among jurists of reason, he possesses a COA for this claim, and the current law in the Third Circuit favors this claim based upon his facts.   *See, e.g., Washington v. Sec'y Pa. Dep't of Corr.,* 801 F.3d 160, 167 (3d Cir. 2015); *Colon v. Rozum*, 649 Fed. App'x 259 (3d Cir. 2016); *Johnson v. Superintendent Fayette State Corr. Instit.,* 949 F.3d 791 (3d Cir. 2020).   Thus, this claim has considerable merit.   Moreover, Mr. Shannon may succeed in amending his habeas corpus petition and add other claims, including his now-exhausted claim relating to the Eakin email scandal.   While the remedies for the *Bruton* claim would be a new trial, it is Mr. Shannon's position that a negotiated settlement, where he will have the certainty of a reduced sentence of a specific term, is in Mr. Shannon's interest.   This is because of the uncertainties associated with the likelihood of success of his habeas corpus claims and, even he should he succeed, the uncertainties of a new jury trial on the underlying criminal charges.

25.      It is the Commonwealth's position that Mr. Shannon's *Bruton* claim is without merit, that he would not be allowed to amend his habeas corpus petition to add further claims, and even if so, those claims are likewise without merit.   Should Mr. Shannon win a new trial, however, retrial of the underlying criminal charges may be difficult because of the lapse of time and one victim may not be able to be located.[1]   As such, it is the Commonwealth's position that a negotiated settlement, where the Commonwealth is assured that Mr. Shannon's conviction will stand and that he will continue to serve a specific sentence, is in the Commonwealth's interest.

---

[1] *See McClesky v. Zandt,* 499 U.S. 467, 491 (1991) ("when a habeas petitioner succeeds in obtaining a new trial, the 'erosion of memory and dispersion of witnesses' that occur with the passage of time' … prejudice the government and diminish the chances of a reliable adjudication."   (Internal quotations and citation omitted).

26.     The Parties' agree that a negotiated resolution of this matter benefits judicial, governmental, and taxpayer resources.[2]   Continued habeas corpus proceedings in this Court and in the Court of Appeals for the Third Circuit, where Mr. Shannon possesses a COA, would likely last years.   This does not account for the time and expense of any remanded proceedings to the state court.   Resolution of this matter now will save the Parties' and this Court's scarce resources and will save the taxpayers thousands of dollars, if not hundreds of thousands of dollars, associated with continued litigation.[3]   The Parties also agree that finality by an agreed resolution at the present time is in everyone's interest.[4]

### C.   The Parties Jointly ask this Court to Conditionally Grant the Writ of Habeas Corpus

27.     Based upon the foregoing, and consistent with the Parties' Confidential Settlement Agreement, the Parties jointly move this Court to conditionally grant habeas corpus relief pursuant to 28 U.S.C. §2254.

28.     It is well-established that this Court has the ability to craft an appropriate remedy in a habeas corpus proceeding.   *See* 28 U.S.C. § 2243 ("The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require").   *See also Burkett v. Fulcomer*, 951 F.2d 1431, 1446-47 (3d Cir. 1991) (citing cases that support the court's ability to

---

[2] "Federal collateral litigation places a heavy burden on scarce federal judicial resources, and threatens the capacity of the system to resolve primary disputes."   *Id.* at 491 (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 260 (1973)).
[3] *See, e.g.,* Charles L. Lindner, *Cost of Death: A Billion Dollars and Counting*, L.A. Times, Aug. 29, 1993, found at https://www.latimes.com/archives/la-xpm-1993-08-29-op-29101-story.html (estimating in 1993 that a cost of a capital case ranges between $3.5 to $4.5 million per defendant) (last visited 10/13/21).   *See also McClesky v. Zandt,* 499 U.S. at 490-91 (referring to the "significant costs of federal habeas corpus review").
[4] "One of the law's very objects is the finality of its judgments.   Neither innocence nor just punishment can be vindicated until the final judgment is known."   *Id.,* at 491.   "Finality has special importance in the context of a federal attack on a state conviction."   *Id.* at 491 (citing *Murray v. Carrier,* 477 U.S. 478, 487 (1986); *Engle v. Isaac,* 456 U.S. 108, 128 (1982)).

fashion an appropriate remedy in a § 2254 matter to rectify the prejudice from a constitutional violation).

29.      In *Burkett,* the Third Circuit determined that the appropriate remedy to "compensate Burkett for the particular harm he has suffered" caused by delay in the state court proceedings was to calculate and credit him with the delays attributable to the state.   951 F.2d at 1447.   Being "acutely aware of the imprecision inherent in this relief" and recognizing "that compensating for a constitutional deprivation is not an exact science," the court remanded the matter "to the district court to grant the writ of habeas corpus by reducing Burkett's [state] sentence by the 39 months of delay chargeable to the Blair County Court."   *Id*. at 1449.   *Burkett* thus stands for the proposition that the circuit and district courts can fashion an appropriate remedy to remedy a constitutional violation of a state prisoner's rights, including a reduction of a state sentence.

30.      In *Williams v. Duckworth*, No. 96-1344, 1997 U.S. App. LEXIS 412 (7th Cir. Jan. 6, 1997), the Seventh Circuit acknowledged the existence of a habeas settlement of a state prisoner.   The court determined that a habeas petitioner's claims were moot because petitioner had dismissed both his state and federal post-conviction petitions with prejudice pursuant to a settlement agreement in exchange for an amendment to the state judgment of conviction for cocaine dealing from class A to class B and a reduction in sentence.   This case provides support for the proposition that habeas claims involving state convictions can be resolved by negotiating a lesser sentence in the state.

31.      In *Ward v. Wolfenbarger,* No. 03-CV-72701-DT, 2019 U.S. Dist. LEXIS 132287, *13-14 (E.D. Mich. Aug. 9, 2019), the court asserted its authority to "modify the conditions of a

writ of habeas corpus if there is a significant change in either the factual conditions or in the law." (Citing *Harvest v. Castro,* 531 F.3d 737, 748 (9th Cir. 2008)).   In *Ward,* the court directed the State of Michigan to remove all references to petitioner's expunged 1971 convictions from any and all records submitted to the Michigan Parole Board; directed the Michigan Department of Corrections to remove the same references from any records regarding petitioner's security and institutional classification, and classify petitioner with an "A" prefix.   *Id.* at *12.   Thus, a habeas court can instruct state entities to take specific steps in furtherance of the grant of habeas corpus relief, much like in *Burkett, supra*.

32.      Further, the *Ward* court encouraged the parties to "try and reach an out of court settlement in this case," based on the compelling facts that suggested a compromise was appropriate.   There, petitioner was serving a parolable life sentence for possession with intent to deliver, had served 38 years in prison, and was 68 years old and suffering from a number of health problems.   In such circumstances, the court believed that a settlement was "in the best interests of the parties and the citizens of the State of Michigan."   *Id.* at *12-14. Thus, that case suggests that a settlement of habeas claims of a state sentence can be based on fundamental fairness.  *See also Washington v. Sobina*, 471 F. Supp. 2d 511, 518 (E.D. Pa. 2007) (the court took the "opportunity to note tangentially the possible value of promoting settlement negotiations in habeas corpus actions," and suggested that "Judges may provide a much needed stimulus, or at least plant the settlement seed in [the parties'] heads").

33.      Based on the above, the Parties agree that this Court should conditionally find that Mr. Shannon "is in custody in violation of the Constitution or laws or treaties of the United States," and that such decision was "contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States…"   28

U.S.C. § 2254(a), (d).   *See Harrington v. Richter,* 562 U.S. 86, 100 (2011).

34.     Specifically, the Parties agree that contrary to *Bruton v. United States*, 391 U.S.

123 (1968), Mr. Shannon's Sixth Amendment Confrontation Clause rights were violated during

his trial where Mr. Shannon's non-testifying co-defendant's statement was read to the jury and

Mr. Shannon's name was replaced with the descriptor, "the other person."   *See also Richardson*

*v. Marsh,* 481 U.S. 200 (1987); *Gray v. Maryland,* 523 U.S. 185 (1998).   The Parties also agree

that Mr. Shannon was prejudiced by the error as reflected by the fact that Mr. Shannon was

convicted and his co-defendant was acquitted.

35.     The Parties further agree that the *Bruton* violation has been the subject of recent

Third Circuit authority for which this Court did not have the benefit of when it denied Mr.

Shannon's habeas corpus petition.   *See, e.g., Washington v. Sec'y Pa. Dep't of Corr.,* 801 F.3d

160, 167 (3d Cir. 2015); *Colon v. Rozum*, 649 Fed. App'x 259 (3d Cir. 2016); *Johnson v.*

*Superintendent Fayette State Corr. Instit.,* 949 F.3d 791 (3d Cir. 2020).

36.     The Parties further agree that this Court should find that the *Bruton* claim was

properly exhausted.   28 U.S.C. § 2254(b)(1)(A); *see* Shannon's September 26, 2009 Superior

Court Brief, Issue I & p.7-9.

37.     The Parties therefore agree that this Court should conditionally issue the writ of

habeas corpus, vacate Mr. Shannon's conviction, and remand this matter to the state court for

further proceedings consistent with the Parties' Confidential Settlement Agreement.

38.     Should the state court not impose the conviction and/or sentence contemplated by

the Parties' Confidential Settlement Agreement on or before February 28, 2022, this Court's

10

conditional grant of habeas corpus shall become null and void and void, and the Parties will be returned to their current positions in this Court.

39.    In order to avoid any statute of limitations issues, the Parties also request that this Court to retain jurisdiction over this matter until February 28, 2022, or until this matter is dismissed by the Parties.

WHEREFORE, for the foregoing reasons, the Parties jointly request that this Court conditionally grant the writ of habeas corpus pursuant to 28 U.S.C. § 2254, vacate Mr. Shannon's conviction, remand this matter to the state court for further proceedings consistent with the Parties' Confidential Settlement Agreement, retain jurisdiction over this matter until February 28, 2022, and grant such other and further relief as is just and appropriate.

Dated:   December 17, 2021                    Respectfully submitted,

By:   */s/ Lynn A. Ellenberger*
Lynn A. Ellenberger
FEGAN SCOTT LLC
500 Grant St., Suite 2900
Pittsburgh, PA 15219
Phone: 412.346.4104
Fax:    312.264.0100
lynn@feganscott.com
Counsel for Petitioner Emanon Shannon

and

By:   */s/ Ryan H. Lysaght*
Ryan H. Lysaght
Dauphin County District Attorney's Office
101 Market Street
Harrisburg, PA 17101
Phone: 717.780.6767
rlysaght@dauphinc.org
Counsel for Respondents

11